UNITED STATES NET & TWINE CO. *v.* ALEXANDER.

*(City Court of New York, General Term.* December 17, 1891.)

1. ATTACHMENT—AFFIDAVIT—DENYING COUNTER-CLAIMS.

In an action on several distinct claims it is not necessary that an affidavit for an attachment should allege that as to each item there is no counter-claim. *Murray* v. *Hankin,* 30 Hun, 39, disapproved.

2. SAME—GROUNDS—THREATENING PREFERENTIAL ASSIGNMENT.

Direct threats by a debtor to make an assignment preferring other creditors, in order to prevent a particular creditor from proceeding by attachment to secure his debt, constitute sufficient grounds for an attachment against such debtor.

Appeal from special term.

Action by the United States Net & Twine Company against Robert Alexander. From an order denying a motion to vacate an attachment defendant appeals. Affirmed.

Argued before FITZSIMONS and MCCARTHY, JJ.

*F. Solinger,* for appellant.   *C. R. Allison,* for respondent.

MCCARTHY, J.   This is an appeal from an order denying a motion to vacate an attachment upon the papers upon which it was granted. The warrant recites that the grounds thereof are "that the defendant has disposed of his property, and is about to make an assignment, with intent to defraud his creditors." A prior attachment, granted in this action, on the ground that the defendant kept himself concealed within this state, with intent to avoid service of the summons, was vacated upon the merits. The complaint is on two causes of action,—one for goods sold and delivered, and the other for breach of an agreement under which goods were consigned to the defendant. The answer forms one of the original papers on which the warrant of attachment was granted. The affidavit of William H. Wallace sets forth, among other things: "I reminded defendant of his agreement to us. He admitted he was greatly at fault in not doing so. I then asked defendant to pay his bill. He declined to do so, and stated that it was entirely out of the question, as he did not have that amount, or any amount; and finally added, 'I have not a dollar in the world.' I then requested him to secure plaintiff for the amount of its claim, and he requested to be allowed to return the balance of the unsold consigned goods. At that time I did not know as well as now the amount of goods he had disposed of, and refused, because it was agreed by plaintiff and defendant, if he wished to return said goods, he should have rendered a statement and made such request before the season in which such goods are most salable is over, and that now it was too late. Since that time I have learned from Mr. Onion that the defendant has sold a larger quantity of the consigned goods than he represented he had done on that evening. Again, continuing the conversation had with the defendant at that time, I requested defendant to state exactly what his circumstances were, in order to see if I could not assist him in adjusting matters, whereupon he stated that his stock and fixtures were worth between $2,700 and $3,000, including the consigned goods of plaintiff, and that the amount of his indebtedness to his various creditors was over $1,500, or thereabouts. I then demanded of defendant what he intended to do, and he answered that he was insolvent, and could pay no one, and that he was ruined, and that by reason of the attachment in force at that time plaintiff had got an upper hand of him, and stated that he must assign, whereupon I added we proposed to keep the upper hand until he paid or secured our claim. Plaintiff thereupon departed, saying, 'If I must go to the wall I will make such an assignment by preferring other creditors, to whom I am under greater obligations to, if you continue to press your attachment; and the result will be that you will not get a cent.' Whereupon I added, 'All right.' Defendant then responded: 'If you will give me

a show, I think I could pay you; but if you do not, I must throw up everything.' That this conversation took place in the presence of Mr. Allison, plaintiff's attorney. I am convinced that defendant is in an insolvent and failing condition. That the sources of my information as to the facts not sworn to in this affidavit positively are from Mr. Clarence Onion and Charles R. Allison, whose affidavits are annexed." The affidavit of Mr. Clarence Onion, among other things, sets forth: "And asked if he could not adjust it by having plaintiff wait. That he had no money whatever, and others were pressing him as well as plaintiff; and that the goods consigned him by plaintiff were all there, with a very small exception, which had been sold by him. That plaintiff's action would ruin him, and it was his duty to protect himself and others by means of making an assignment if he could not get the favorable arrangement he demanded from plaintiff. I asked him how he meant to protect others. He answered, 'Simply by preferring them in an assignment.' I asked him if he thought that was square. He answered: 'I don't care. That's what I propose to do if the company pushes me to a suit, and then the company will get nothing but the consigned goods.' I told him I had nothing to say about the arrangement he desired, but to see Mr. Wallace, the treasurer of the company, who was out at that time."

We have give this case very careful examination and consideration on the various points suggested by appellant's counsel, and do not find any defect in the warrant of attachment. It correctly states the amount of plaintiff's demand. There is no rule requiring that, where the action is brought on distinct claims, the affidavit should allege that as to each item there is no counter-claim. The defendant, however, cites *Murray* v. *Hankin*, 30 Hun, 39, in support of same. This was a mere *dictum* of the judge writing the opinion, who, among other things, suggested that perhaps such ought to be the case. We find no authority sustaining this position, and cannot agree with him in such suggestion. DANFORTH, J., in *Ruppert* v. *Haug*, 87 N. Y. 143, 144, after stating other requirements needed, citing section 636 of the Code of Civil Procedure, says: "He must show by affidavit that he is entitled to recover a sum stated therein over and above all counter-claims known to him. It is enough if the affidavit shows this to the satisfaction of the judge who receives the application for the warrant." As to the sufficiency of the evidence, the court must determine that from all the papers submitted on application, and not from any particular one. We think that, while this case is not as strong as it might be, and therefore may be termed a close one, there is sufficient evidence of fraudulent intent to sustain the attachment. Mr. Wallace swears that the defendant said to him, (Mr. Wallace's affidavit:) "I will make such an assignment by preferring other creditors, to whom I am under greater obligations to, if you press your attachment; and the result will be that you will not get a cent," and that in Mr. Onion's affidavit: "I asked him if he thought that was square. He [defendant] answered: 'I don't care. That's what I propose to do if the company pushes me to a suit, and then the company will get nothing but the consigned goods.'" Here was a direct threat to make use of the power and right to assign and prefer as a condition, in order to induce, prevent, and intimidate the plaintiff, and thus force him to refrain from exercising his legal right in collecting what he deemed a lawful debt, and in securing and maintaining the same by an attachment. The question is not as to his right to assign or prefer creditors, but the effort by his threats to impose upon the plaintiff a condition, and thus prevent the plaintiff from making use of a legal remedy. See *Gasherie* v. *Apple*, 14 Abb. Pr. 69, approved in *Anthony* v. *Stype*, 19 Hun, 265; *Livermore* v. *Rhodes*, 27 How. Pr. 507. This is not a parallel case with *Brown* v. *Keogh*, (City Ct. N. Y.) 14 N. Y. Supp. 915. As the motion to vacate was founded only on the original papers, the statements contained therein are, for the purpose of this appeal, to be regarded as true, and, if they establish a

*prima facie* case against the defendant, he should be required to satisfactorily answer or explain them before asking that the important remedy for the temporary security of the plaintiff should be set aside. The order appealed from is affirmed, with costs.